AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the

Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 3:26-mj-1315-SJH |
| RASHAWN RANKIN | ) | |
| a/k/a "Ra Ra" | ) | |
| a/k/a "Rasta" | ) | |
| DA'VEON SMITH | ) | |
| a/k/a "Day Day" | ) | |
| a/k/a "PFC Day Day" | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ November 26, 2024 _____ in the county of _____ Duval _____ in the
_____ Middle _____ District of _____ Florida _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 | Use and maintainance of a drug premises and aiding and abetting the same |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Dallas Palecek, TFO DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-31-26

_____
*Judge's signature*

City and state:    Jacksonville, Florida

Samuel J. Horovitz, U.S. Magistrate Judge
_____
*Printed name and title*

## CRIMINAL COMPLAINT AFFIDAVIT

I, Dallas E. Palecek, being a duly sworn and appointed Task Force Officer (TFO) with the Drug Enforcement Administration ("DEA"), hereby declare as follows:

### INTRODUCTION

1. I am currently a TFO with the DEA and have served in that capacity for approximately four years. As such, I am a law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), empowered to conduct investigations and enforce federal criminal statutes. I am also a Narcotics Detective with the Nassau County, Florida Sheriff's Office and have served in that role for approximately 13 years. Overall, I have been a member of the Nassau County Sheriff's Office for approximately 23 years. Before that, I worked for approximately 11 years with the Jacksonville Sheriff's Office (JSO) and for one year as a TFO with the Department of Homeland Security Investigations. In total, I have approximately 34 years of experience in law enforcement.

2. During my career in law enforcement, I have participated in and conducted investigations into the sale and distribution of narcotics, which have included investigation techniques including, but not limited to, physical surveillance, undercover transactions, controlled purchases, and both state and federal search warrants. I have attended trainings with both the DEA and at the state level in narcotics strategies and drug trafficking.

3.     I am currently investigating Rashawn Dalavan RANKIN and Da'veon Reyshard SMITH for maintaining a drug house and possessing narcotics with the intent to distribute the same. The information set forth in this affidavit is based on my personal knowledge, as well as information obtained from other sources. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation in this affidavit. Rather, it only includes the information necessary to support a finding of probable cause.

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that RANKIN and SMITH have committed a violation of 21 U.S.C. § 856(a)(1) (using or maintaining a drug premises) and 18 U.S.C. § 2.

## PROBABLE CAUSE

5.     On November 22, 2024, I applied for and was granted by United States Magistrate Judge Laura Lothman Lambert, a search warrant for a house located at 1836 New Berlin Road, Jacksonville, Florida 32218, which will be referred to hereinafter as "the Blueberry Farm," a location where there was probable cause to believe that drugs were being sold and stored.

6.     On November 26, 2024 at about 11:36 a.m., I, along with DEA TFOs, special agents, and detectives from the Nassau County Sheriff's Office, executed the search warrant at the Blueberry Farm. As law enforcement pulled into the location, we split into two groups. I was in the group tasked with securing the back portion of the house. While there, I observed three males and one female come out of the house,

2

and run toward a red Buick, which had its engine running and its doors unlocked, but it was blocked in, i.e. prevented from moving, by law enforcement vehicles. After seeing that the car was blocked-in by members of law enforcement, the same four individuals ran towards the woods at the back of the property. It was announced over the radio that the four individuals were running from the scene. I observed an individual who I now know to be RANKIN running out of the house of the Blueberry Farm. Law enforcement did not apprehend RANKIN at this time. SMITH was located by law enforcement and brought back to the residence.

7.    On February 11, 2025, I conducted an interview of a confidential source (or CS) who has pled guilty to drug trafficking, has a felony record, and is cooperating with law enforcement in hopes of receiving a reduced sentence at the CS's eventual sentencing. The confidential source advised that he/she assisted in selling drugs at the Blueberry Farm with RANKIN, who was known to the CS as "Rasta," and SMITH. Both the confidential source, Rankin and SMITH, as well as others, operated the Blueberry Farm on the behalf of another individual, who was the head of a drug trafficking organization. I know from my investigation, as well as my conversations with the confidential source, that the Blueberry Farm was only one of many drug premises run by the head of the drug trafficking organization.

8.    Investigators recovered drugs, a firearm, and drug paraphernalia from inside of the Blueberry Farm on November 26, 2024, specifically:

3

a. a Sig Sauer 9mm model P365, which was located on the entertainment center of the living room.

b. Approximately 2.6 grams of methamphetamine from the laundry room floor inside of a pouch, which tested positive for methamphetamine by the DEA laboratory.

c. Approximately 11 grams of fentanyl from the living room, on a side table by the front door, which tested positive for fentanyl by the DEA laboratory.

d. Approximately 10 grams of cocaine from the living room, on a side table by the front door, which tested positive for cocaine by the DEA laboratory.

e. Approximately 22 grams of a substance believed to marijuana from the living room side table by the front door and the entertainment center, which was also in the living room.

f. A digital scale with pink powder residue from the entertainment center.

g. Several loose plastic bags and tin foil, which were on the kitchen counter.

h. Plastic bags with a pink powder residue on the dining room bar.

i. Foil and plastic bags containing pink powder residue from the floor of the laundry room.

j. A ledger listing suspected drug debts and payments inside a dresser in a bedroom and medical paperwork with RANKIN's name on it.

4

k. A Night Owl DVR, model number DVR-FTD4-8, serial number D9ZQTC35XKXO.

l. Seven cellular phones.

9. The red Buick was also searched pursuant to the warrant. Inside, investigators found what laboratory testing confirmed was approximately 9 grams of fentanyl, 4 grams of methamphetamine, and 7 grams of cocaine. Three cellphones were also recovered from inside or around the vehicle, as well as RANKIN's Florida driver's license.

10. SMITH was released and as he was walking away, asked for his cellular phone and described it as one of the phones seized by law enforcement from the living room of the residence.

11. On January 30, 2025, I applied for and was granted by United States Magistrate Judge Monte C. Richardson, a search warrant for the DVR system that was located on November 26, 2024 at the "Blueberry Farm."

12. I reviewed the DVR system's recordings and observed RANKIN and SMITH (and others) engaging in drug sales. Specifically, at the Blueberry Farm residence, I observed customers entering through a rear door into a secure hallway where Rankin, SMITH, or others, would hand the individuals small object(s) through a mesh security door. In exchange, the individuals would hand the seller cash. On several occasions, I observed that the customer would sit inside the secure area and use what RANKIN or SMITH provided them by either snorting or smoking the item,

5

which is consistent with drug usage. On the date of the execution of the Blueberry Farm search warrant, several drug users were located on the premises. My further review of the DVR system recordings revealed that RANKIN was captured on video selling drugs from the Blueberry Farm from roughly November 1, 2024 through the day of the search warrant execution, November 26, 2024. SMITH was captured on video selling drugs from the Blueberry Farm from roughly November 20, 2024 through the day of the search warrant execution, November 26, 2024.

13.     Based upon the aforementioned information, events, and my training and experience, I submit that there is probable cause to believe that RANKIN and SMITH has committed a violation of 21 U.S.C. § 856(a)(1) (using or maintaining a drug premises) and 18 U.S.C. § 2 (aiding and abetting), which substantiates the issuance of a complaint and arrest warrants.

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

Dallas Palecek
Task Force Officer
Drug Enforcement Administration

Sworn before me this 31 day of July, 2026

SAMUEL J. HOROVITZ
United States Magistrate Judge
Middle District of Florida

7